Mr; Chief Justice TANEY
 

 delivered the opinion of the court.
 

 It appears in this case, that, in January, 1844, a bill was filed in the Circuit Court of the United States for the eastern district of Louisiana, sitting in chancery, by Richard Nugent, assignee of the estate of Elizabeth Norton in bankruptcy, stating, that the said Elizabeth Norton, on the 9th day of May, 1842, filed her petition in the District Court of the United States to be declared a bankrupt, and thM she was accordingly decreed to be such about the 1st of June, in
 
 *435
 
 the same year; that she returned in her schedule two lots of ground in the city of La Fayette, particularly described in the bill; and that George William Boyd was, among others, returned as a creditor for the sum of $9000, and -.that notice was served on him of the proceedings in bankruptcy. The bill further states, that prior to and at the time of the petition in bankruptcy die two lots above, mentioned were affected by a special mortgage, to the said Boyd,, which was valid by the laws of Louisiana, .for the sum of $9000 and upwards; that prior to- the bankruptcy of Elizabeth Norton, that is to say, about the 11th of November, 1841, Boyd commenced suit upon his said mortgage in the proper state court of Louisiana,. and obtained judgment, with the privileges of a mortgage^ and issued execution thereon, which was levied upon the said property about the 16th of February, 1842; and on-or about the 4th of dune following the property was regularly sold by th.e sheriff under the execution to Isaac T. Preston and Abner Phelps, who took possession of the said twp lots and continue to hold them, claiming as owners. The bill further states, that the complainant, having re-* ceived. notice of the levy and intended sale, undér the execution, duly, notified the said Boyd', Preston, Phelps, and thé sheriff in writing, before the sale, of his appointment as assignee as-aforesaid, and cautioned them, not to proceed with the sale; but that the parties, continuing and intending to.defeat fhe just rights of the'complainant, proceeded to sell, and ■ placed the purchasers above mentioned in possession of the property iii question. The complainant refers to and exhibits with his bill certain rules adopted by the District Court of the United States for the disposition of real estate surrendered by bankrupts,.and encumbered by mortgages; and charges,• that by virtue of the Bankrupt Act all the proceedings in the state court, ought-to have been stayed, from the moment the petition of the bankrupt was filed ;. and that the subsequent proceedings were irregular, and conferred no title on the purchasers; and that the complainant was entitled to take the property from- the hands of the sheriff, and to administer and sell the same under the direction of the District Court by virtue of the act of Congress and the rules of court above mentioned. The bill then prays process against Boyd, Preston, and Phelps, and that the proceedings under the execution subsequent to the petition in bankruptcy should be declared' irregular; that the title of Preston and Phelps from, the sheriff should be decreed to be null and invalid, and the said Preston and Phelps be .ordered to restore the said lots to the possession of the complainant^ to be administered and sold by him in conformity with the orders' of the District Court of the' United States, and in pursuance of the rules before referred to; and that Boyd should be directed to come into the District Court, and conform himself to the orders of the court and the rules aforesaid.
 

 The defendants appeared, and demurred to the bill; and upon
 
 *436
 
 final hearing on. the demurrer, the following decree was passed by the Circuit Court:—
 

 “ This is a bill in equity, presented by an assignee in bankruptcy, to set aside a certain sale, made under a writ of seizure and sale from the'.District Court of Louisiana, upon the ground that the District.Court of the United. States was, by the bankrupt law passed by Congress, on the 19th of August, 1841, vested with exclusive jurisdiction over all matters appertaining to the settlement of the affairs of the.bankrupt; and that, consequently, the sale made by the District Court of Louisiana has transferred no legal title to the property. . The bill further claims the property sold as a part of the property of the bankrupt to be sold or.otherwise disposed of under the orders of the District Court of the United States. It appears that the property in question consists of real estate, and that the same was sold to satisfy a special mortgage held by the creditor who obtained the order of seizure and sale from the state tribunal.
 

 <c I have, after an attentive consideration of the various allegations in the bill, ordered the same to be dismissed, and shall now proceed to state very briefly the grounds upon which I acted. In the first place, I do not consider that there is any equity in the bill; the property was specially mortgaged to satisfy the claim of the' creditor who demanded the sale; and it does not appear that in the assertion of his right he has in any manner interfered with the"rights of the other creditors of the bankrupt. It does not appear that any doubt existed as to Ihe validity of the mortgage, or that the creditor-has obtáined any right or any advantage over the other creditors which the District Court, sitting in bankruptcy, would not' have been bound to award him under the-express provisions of the bankrupt •law. It is quite clear that the liens and mortgages which are valid . under the state law must be. protected by the District Court of the United States, sitting in bankruptcy, and it will not be pretended that the creditor at whose instance the property in question was sold would not have been entitled, under any and all circumstances, to the proceeds of that property to sátisfy the amount alleged to be due him. -What benefit would then accrue to the general creditors of the bankrupt ■ by the interference of this court in a matter which seemá" to have been fairlv and finally, adjudicáted ? While I am well satisfied that no good would arise from such an interference, I am equally well satisfied that great'injustice would be done both to the mortgage creditor and to the estate of the bankrupt, by subjecting both unnecessarily to additional costs and expenses.
 

 “ I agree fully in the opinion, that upon the ground of expediency the jurisdiction' of the District Court of the United States over all the property of the bankrupt, mortgaged or-otherwise, should be exclusive'; but I do not understand the.bankrupt law to render it so. Where a creditor, by virtue of a special mortgage, elects to foreclose that mortgage before a state tribunal, the federal court is not called
 
 *437
 
 upon to interpose, except in cases where from the nature of the case wrong or injustice may be done to other creditors in interest, or where the mortgage itself may be contested.
 

 “
 
 I wish it, however, to be distinctly understood, that I am fully of opinion that the District Court of the United States is vested with jurisdiction over mortgaged property belonging to the' bankrupt, and that when a proper case is shown, it has power to foreclose a mortgage, and to do all other acts necessary to bring about a final • distribution and settlement of the bankrupt estate. I am also of the opinion, that in a case where a creditor calls in question the validity of a mortgage held by another creditor, it is the duty of the said court to'exercise jurisdiction over the questions involved, and, if necessary, to declare the mortgage null .and void.
 

 “ In the case before me no such question is involved, and I,see no reasons why the equity powers of this court should be exercised to do that which cannot change the rights pf the parties interested,
 

 . but which would haye the effect of doing a positive injustice to the mortgage creditor, by subjecting, his property to useless costs and expenses.
 

 “ It is, therefore, ordered that the complainant’s bill be dismissed.”
 

 We have inserted the whole of this decree, because we think the court were not only right in dismissing the bill, but, with a single exception, we concur also in the principles and reasoning on which the learned judge founded his decision. The exception to which we allude is that part of the decree in which he expresses his opinion, that upon the ground of' expediency the jurisdiction of the District Court of the United States over all the propefty of the bankrupt, mortgaged or otherwise, should be exclusive, so as to take away from the ■ state courts any jurisdiction in such cases. Upon that subject it is not our. province to decide, and we have no desire to express an opinion upon it. But in every other respect the decreé conforms to the opinion delivered by this court, at the present term, upon the motion for a prohibition in- the case Ex parte the City Bank of New Orleans, in the matter of Wm; Christy, assignee of Daniel T. Walden, a bankrupt,
 
 v.
 
 The City Bank of New Orleans. In that case the opinion of this court in relation to the jurisdiction of the District Court hi matters of bankruptcy has been fully expressed, and need not be repeated hereand according to the. principles therein stated the decree of the Circuit Court in this chse must be affirmed.
 

 Mr. Justice CATRON.
 

 •I think the adjudication in this case is in-conflict with that made in the Circuit.Court at New Orleans in Christy against the City Bank; and in support of which; a majority of my brethren saw proper to' express their views at a' previous day 'during this term, in the unsuccessful application of the bank for a prohibition; but that the
 
 *438
 
 cases are alike — and one cannot be maintained, and the other overthrown. .' . _ ' •
 

 . _ In that cáse the petition of lie assignee set forth the entire legal grounds, why the District Court should annul the judgments in the state -eourt, and pronounce the sale void.
 

 1. That the property'sold'was given in by Waldén, the bankrupt, as part of his effects.
 

 2. That .the bank had notice thereof, before the sale by the sheriff.
 

 3. That the sale was void, being contrary to the Bankrupt Law, which operated to stay all further proceeding so soon as Walden’s petition was filed, and was a bar to any further prosecution of the suit until an assignee should be appointed. That the sale with notice was a fraud upon the act of Congress, and the other creditors of Walden, by reason' of the law, because the bank was endeavour-ing to obtain an'illegal preference." '
 

 4. That at the sale the property was struck off in blocks, although consisting-of different buildings; at two-thirds of its value: “ All of which actings' arid doings are prohibited by law, and render said sale null and void/’ .
 

 5. ’ That the sáfe was in other respeets irregular, the legal formalities not having been observed. '
 

 6. That the mortgage was void for usury, because in effecting the loan the bank gave Walden bonds on the Second Municipality instead of money, ana they were then at á discount at from twenty to twenty-five per cent.‘
 

 To these allegations the* bank answered:—
 

 ' 1". By plea that the' District Court was not by law empowered to decide on'-the matters charged.
 

 ' ■2.
 
 That all the matters and things set forth had already been decided by a court of competent jurisdiction — referring to the adjudications by name.'
 

 3., 'The, defendant answers, and avers, that the mortgage was legal 'ajid valid, and given upon a full and adequate consideration! *
 

 4. That the order of sale was duly granted, and the»writ thereon - properly issued: and that the property described in the petition was lawfully seized, and after a compliance with all the legal formalities, was sold, arid adjudicated to the defendantsf,that the price was fully" paid by giving a credit — and. that the property is held under an indefeasible title.
 

 5. All the allegations in the. petition not admitted, are denied, and a trial demanded of them.
 

 . This answer was excepted to as containing no legal grounds of defence'; the: question was^adjoumed,. under the 6th section of the-BankfuptLaW, to the Circuit Court to he thereheardund determined; ■ It stood in'that court as ón bill and answer r- the answer was taken,' of'course .as,true in all its parts — the only question.being whether
 
 *439
 
 any legal ground of defence was furnished by the plea,-supported by an answer, denying the alleged unfairness of the sale — presenting tiie same question, in substance as did the case of Harpending
 
 v.
 
 The Hutch Church, in 16 Peters. By setting the case down on plea and answers, the proceedings in the supreme and inferior state courts were admitted' of "necessity to have been properly and fairly conducted ; and the sale legally and fairly made. This was the undoubted' aspect of the case as presented to and decided by the Circuit Court. Its decree, in the form of instructions to the bankrupt court, is, first — That the latter had full and ample powers to try all the .questions presented in the assignee’s petition: 2dly..-That the sale made under the seizure by order of the state court was void;- and that the bankrupt court should • declare it so: 3d. That the bankrupt court had full power to re-try the validity of the mortgage and ascertain whether it was void for usury or otherwise :• and this on the ground exclusively that the proceedings in the state courts were annulled by force of the bankrupt , law, and the fact of Walden applying for its benefit.
 

 Taking the petition and answer together, and a case existed in all its features like the present, on the title by execution.; each being a fair and regular proceeding in the state court. One is suppressed ■ — and the other maintained. And -oh. what ground does the -district judge assume to act contrary to the former adjudication ? Because it-was equitable and for the best interests of the estate to be distributed, in his judgment. The obvious-meaning of which is, that he had power to overthrow the title or not, at - his discretion; and that such discretion was the law of the. case and the tenure of the title, according to the true intention of the Bankrupt Act. On this assumption are the two cases attempted to be reconciledand on no other can they avoid direct conflict, even in appearance. In reality, the one title is as- good as the other. The tendency of such a. doctrine is too threatening- to titles to be silently acquiesced in. Did Congress intend that the force and effect of- judgments and executions in a state court, should depend on the sole discretion of a judge sitting in bankruptcy ? Was it intended to discard the axiom, that .unrestrained'discretion in. those that govern, is inconsistent with the rights of those that-are governed, be they-of property or person?- It is very difficult to.suppose so; and as difficult to accommodate the construction of the act to such a supposition. It is declared, “ that it shall not be construed to annul, destroy, or impair,- any liens or mortgages, on property real or personal, which may be Valid by-the laws of the states respectively.” ;
 

 Here two liens are combitied '; one by. mortgage, the other by execution levied. In Christy
 
 v.
 
 The City Bank, as already stated, that by mortgage was recognised as a right protected by the act, but to • be administered in the bankrupt court only; that by execution was
 
 *440
 
 pronounced void. This decision the court below was asked Jo follow out, in the case before us, and refused.
 

 By the execution levied,' the lien
 
 “
 
 was valid by the laws of the state” — in the words of the saving clause; the remedy by seizure created the right; to annul, or to stay the execution, impaired .a right, excepted out of the act. Since the opinions were delivered in the ex parte application of the City Bank, we have in effect so held at the present term, in Waller
 
 v.
 
 Best.
 

 In making exceptions in favour of liens created by judgment and execution, Congress was governed by practical considerations. The-states usually were large, the .bankrupt courts in many of them far off from the creditors, the debts owing by the bankrupt- small in amount'to a great extent; for these recoveries would Be had in the inferior courts and before magistrates; the property would be seized by execution, and he the debtor be driven into bankruptcy; this step might be taken secretly. The officer having possession of the property had to dispose of it according to the commands of the writ, and make return to the state tribunal; 9. return that the debtor had- applied for the benefit of the- bankrupt law would not be a legal return, as I have held, and always supposed; and that a‘decree declaring the party a bankrupt, would .not alter the caseas in either, the .lien would be not only impaired, but destroyed where the levy alone gave it, as is the case in many instances. To drive, the small creditor into the bankrupt court to establish his demand and effectuate his lien, would often have been worth more in trouble and' expense than the debt, and -in the mean time the property, being abandoned by the officer, and not taken possession of by the' as-signee, would in many instances perish,' These facts were too palpable for Congress to overlook. To protect such liens, I take it. the exception was a compromise between the opponents and friends of the bill; the one side supporting rights secured by the state laws, and the other seeking to adopt a different rule under the Constitution of the United States, in regard to the relation of .debtor and creditor.
 

 In many cases the bankrupt might owe debts in other states than that where he would be declared bankrupt; then other, difficulties 'would arise on executions being levied in. the foreign jurisdiction, to.which the powers of the bankrupt court could not extend. In all the cases enumerated the assignee had given to him the same powers' the bankrupt previously had, to sue and defend, and. no material'difficulty could arise (or has arisen) in adjusting the claims-in the state courts, to. which the assignee was bound to apply.
 

 That a mortgage can be foreclosed in the bankrupt court, and the lien given by it be preserved -there, I have never doubted, if the jurisdiction of a state court had not attached, and was not ousted by the proceedings in bankruptcy. .
 

 For the foregoing, reasons, I think the court of Louisiana was ■
 
 *441
 
 mistaken when it assumed to have power to suppress the sale made by the sheriff, or to let it stand, at its discretion.
 

 The decree is deemed entirely proper; nor would the reasons for it have been noticed had not my brethren adopted them to the extent above; and with which adoption I cannot concur.