JOHN L. PERRY vs. SAMUEL CHANDLER.

Personal property, under mortgage, and in the possession of the mortgagee, was attached on mesne process by a creditor of the mortgagor, and taken into the custody of the officer; the creditor then instituted proceedings against the mortgagor in the district court, upon which he was adjudged a bankrupt, and the attaching officer was appointed his assignee; the mortgaged property was subsequently sold by the assignee, under a license from the district court, and the proceeds distributed among the creditors of the bankrupt; and, upon the petition of the assignee, the mortgage was declared null and void, by the district court, as having been made in contravention of the bankrupt law, and ordered to be delivered up to the assignee to be cancelled. In an action of trespass by the mortgagee against the sheriff, for the act of his deputy in attaching the mortgaged property, it was held, that the action might be maintained; but that the defendant might show the subsequent proceedings in mitigation of damages and thereby reduce them to nominal only.

THIS was an action of trespass, originally commenced in this court, by a writ dated the 20th of May, 1842, against the defendant, as the sheriff of the county, for the taking and carrying away of a stock of dry goods, and other personal property enumerated in the writ, by Jefferson Bancroft, his deputy; and was submitted to the court upon an agreed statement, from which the following facts appeared: —

On the 25th of April, 1842, Charles Maynard was the owner of the stock and property in question; and the plaintiff held two notes signed by Maynard, which had then become due and payable, and also Maynard's written agreement to indemnify him against a note held by Herman Bass, on which the plaintiff and Maynard were jointly liable. On the same day, Maynard, for the purpose of preventing an attachment of his property, and also to secure and indemnify the plaintiff, at the plaintiff's request, gave him a mortgage of the stock of goods and other property, which were the subject of this action. The mortgage provided, amongst other things, that in case of a breach of the condition, the plaintiff should have a right to take immediate possession of and sell the property.

The mortgagor continued his business until the 10th of May, 1842, when he gave a second mortgage of the same

property to Hazen J. Burton, a creditor residing in Boston; and, on the 12th of the same May, the second mortgagee being about to take possession, the plaintiff demanded of the mortgagor the performance of the condition of his mortgage. The mortgagor failing to comply with this demand, the plaintiff took actual possession of the mortgaged property, and was proceeding to make arrangements for a sale thereof, agreeably to the terms of the mortgage, when, on the 16th of the same month, the defendant's deputy, Bancroft, (having a bond of indemnity from the attaching creditors,) attached, took and carried away the property, by virtue of two writs, in favor respectively of Charles Arnold & company, and of Joseph C. Hicks. On the 17th of the same May, the plaintiff made a statement in writing, in due form of law, to Bancroft, of his claims upon the property attached, and demanded payment and discharge of the same within twenty-four hours; with which demand Bancroft then and ever since has neglected to comply. At the next June term of the court of common pleas, to which these writs were returnable, Bancroft made return of them with his doings in pursuance of the same endorsed thereon; and they were duly entered, and continued from term to term, until the September term, 1843, when the plaintiffs therein became nonsuit.

On the 19th of May, 1842, the attaching creditors, Hicks and Arnold & company, presented a petition to the district court of the United States, for the district of Massachusetts, setting forth that Maynard had given the mortgages above mentioned; that the same were without consideration and for the purpose of defrauding creditors; that they were executed in contemplation of bankruptcy, and with a view to give the mortgagees a preference or priority over the other creditors of the mortgagor; and praying, that for that cause, Maynard might be declared a bankrupt under the bankrupt law of the United States. This proceeding was resisted, on the part of Maynard, but without effect; and he was adjudged by the district court and decreed a bankrupt on the 21st of October, 1842. From this decree, Maynard appealed to a

jury, who, after a full hearing of the matter, found the mortgage (to Burton) of the 10th of May, 1842, to have been given in violation of the bankrupt law, but were unable to agree as to the plaintiff's mortgage. Maynard was thereupon again declared a bankrupt, on the 20th of December, 1842, and on the 2d of January following, the defendant's deputy, Bancroft, was duly appointed his assignee.

On the 26th of January, 1843, Maynard, at the request of Bancroft, made upon oath and delivered to the latter a schedule of his property and effects, which Bancroft filed in the proceeding in bankruptcy. Bancroft having obtained from the district court a license to sell the property of the bankrupt, made a sale of the goods and property embraced in the plaintiff's mortgage, about the 1st of March, 1843, — professing to act therein as assignee under the license of the court, — and the proceeds of the sale were subsequently distributed amongst the creditors, in pursuance of an order of the district court.

On or about the 22d of August, 1843, Bancroft, in his capacity of assignee, presented a petition to the district court, setting forth, among other things, the giving of the mortgage by Maynard to the plaintiff; that it was given without consideration, in contemplation of bankruptcy, and for the purpose of securing a priority or preference, in favor of the plaintiff, over the other creditors of Maynard; that Maynard had been duly declared a bankrupt, and that the petitioner had been appointed assignee of his estate; and praying that the mortgage might be decreed void, as being fraudulent under the bankrupt law, and that it should be delivered to the petitioner, as assignee, to be cancelled. The plaintiff appeared and made answer to the petition, objecting to the jurisdiction of the court, and denying the power thereof, for reasons set forth in the answer, to grant the prayer of the petitioner. But the court overruled the plaintiff's objections, and such proceedings ensued thereupon, that, on or about the 1st of September, 1846, the district court declared the mortgage to be null and void, as made in contravention of the bankrupt law, and

ordered the plaintiff to deliver the same to the assignee or his attorney, to be cancelled. The mortgage was then on the files of the district court, where it still remains.

On the 24th of May, 1842, an injunction from the district court was served upon the plaintiff and Burton, the mortgagees, whereby they were enjoined from further proceeding with their claims, as such, against the mortgaged property, which was then attached and in the possession of the defendant's deputy, Bancroft.

The parties agreed, that the validity of the plaintiff's mortgage, as at common law, and in the absence of any bankrupt law, was not to be called in question in the argument and decision of the cause, under the statement of facts; the defendant insisting that the same was void, as against the bankrupt law, and that the proceedings and decree of the district court, annulling the same, were valid and effectual for that purpose, so far as this action was concerned; and the plaintiff denying the validity of the proceedings in bankruptcy, so far as regarded his mortgage, and their effect to impair the same, or his right to recover in this action; and alleging that the proceedings and decree of the district court, in this behalf, were not admissible in evidence, on any ground, in defence of this action.

The case was argued in writing at a previous term.

*G. Parker*, for the plaintiff.

*T. P. Chandler*, for the defendant.

DEWEY, J. The mortgage to the plaintiff was valid as between the parties to it, and also as to third persons, so long as there were no proceedings in bankruptcy affecting it. The mere existence of the bankrupt law, although containing provisions that might affect the mortgage, and in reference to which it might be illegal and invalid, if no proceedings had been instituted under it, would furnish no defence to a stranger, who should intermeddle with the property, not exercising or claiming to exercise any authority over it, as an assignee or other agent clothed with authority under the bankrupt law. *Atkins* v. *Spear*, 8 Met. 490; *Dodge* v. *Shelden*, 6 Hill, 9.

1. At the time of the making of the attachment by the defendant, which is the act of trespass for which this action was instituted, no proceedings in bankruptcy had been instituted against Maynard, and it could not have been foreseen with certainty, that any such proceedings would take place, or that the property of Maynard would be sequestered for distribution under the bankrupt law. The mortgage to the plaintiff, therefore, was so far effectual as to pass the property, and to entitle the mortgagee to the possession, as against the mortgagor and third persons; liable, however, to be defeated, if the mortgagor should be declared a bankrupt, and the title should be shown by the assignee of the bankrupt to have been acquired by the plaintiff in violation of the provisions of the bankrupt law.

2. Had the district court jurisdiction over the subject matter of the mortgage, to examine into its validity, as in contravention of the bankrupt law, and is the decree of that court binding upon the mortgagee ? Clearly, the district court had such authority, to the extent of deciding whether the mortgage was to be so far set aside, as to require the assignee, in whose possession the property was, to convert the same into money, and to make it a part of the assets of the mortgagor for distribution among his creditors. Act of Congress, 1841, c. 9, § 6; *Norton* v. *Boyd*, 3 How. 426, 437. The proceeding before the district court was binding upon all persons concerned, so far as to justify the defendant in making the application of the avails of the mortgaged property, in pursuance of such order and decree.

3. This action having been instituted against the defendant, at a time when the plaintiff had a right to the property, subject only to the contingency, that at a future day, his title might be defeated by proceedings against his mortgagor in bankruptcy, and therefore maintainable; the further question is, whether the defendant can show, in mitigation of damages, that the property, thus wrongfully taken by him from the possession of the plaintiff, was liable to be sequestered for the debts of the mortgagor, upon the ground of its having been

transferred to the plaintiff, in violation of the provisions of the bankrupt law, and has in fact been thus sequestered, and and that he has as assignee, under the decree of the district court to that effect, accounted for the avails thereof, as a part of the assets of the bankrupt to be distributed among his creditors. The plaintiff insists, that if the defendant was a wrong-doer, in the original taking of the property, he must now be charged with the whole value of it; and this irrespective of the proceedings in bankruptcy, and of the fact that he has been required to account therefor as assignee of Maynard. It is, no doubt, true, that the possession of personal property is sufficient to entitle a party to maintain trespass against the wrong-doer, and to recover the whole value of the property; and that it would constitute no legal defence either to the action, or to the damages, to show merely an outstanding title in a third person, or that the plaintiff had a special property in the articles, whilst the general property was in another.

Some of the cases cited by the counsel for the plaintiff, particularly that of *Hanmer* v. *Wilsey*, 17 Wend. 91, seem to go much further and to hold, that in a case where the original taking was unlawful, the plaintiff would be entitled to recover the full value of the property taken, and that evidence of the appropriation of the proceeds of the property to the use of the plaintiff, or a surrender of it, or of its proceeds, to other persons having a legal right thereto, would not be competent in mitigation of damages. We think a different rule has been adopted in Massachusetts. In the case of *Pierce* v. *Benjamin*, 14 Pick. 356, where the action of trespass was maintained, the sale of the property being held illegal, yet the defendant was allowed to give in evidence the application of the proceeds to the payment of taxes due from the plaintiff, in reduction of the damages. In the case of *Kaley* v. *Shed*, 10 Met. 317, the defendant was allowed to show, in mitigation of damages, that the property had been taken from him by an attachment in an action against the plaintiff as the plaintiff's property. The case of *Squire* v. *Hollenbeck*, 9 Pick.

551, is more in point, because it presents a case, where, as in the case at bar, the avails of the property did not go to the use or benefit of the plaintiff. The damages were allowed to be reduced, by showing that a third person had an interest in the property; and that although the possession of the plaintiff was violated, for which violation he might maintain an action; yet that there was a third person having a paramount title, and that the avails of the property, or the property itself, had gone to his use. The application of the principle, which was settled in that case, seems to authorize the ground assumed by the defendant, in the present case, as to the reduction of the damages.

*Judgment for the plaintiff for nominal damages.*